El Juez Asociado Señor Martínez Torres
emitió la opinión del Tribunal.
Nos corresponde resolver si una parte, durante el descubrimiento de prueba, puede tomarle una deposición a un abogado que trabaja en el mismo bufete que el abogado de la parte contraria sin demostrar justa causa. Para contestar esa interrogante, debemos sopesar si extendemos lo resuelto en Ades v. Zalman, 115 DPR 514 (1984), a los hechos que nos ocupan. Luego de analizar el asunto con detenimiento concluimos que procede extender a este caso lo resuelto en Ades.
I—i
El Sr. Victor Alvear Maldonado presentó una demanda contra Ernst & Young, LLP (EY), en la que reclamó, al amparo de la Ley de Procedimiento Especial Sumario, Ley Núm. 2 de 17 de octubre de 1961 (32 LPRA see. 3118 et seq.), $99,800 por unas horas que trabajó, pero que supuestamente no se le fueron compensaron.
EY contestó que el tribunal carecía de jurisdicción porque el señor Alvear Maldonado no había agotado ciertos remedios de mediación y arbitraje. Alegó que la compañía tenía una política que obligaba a los empleados a resolver las disputas en un procedimiento de arbitraje. Sostuvo que el señor Alvear Maldonado era empleado exento y que, como tal, le aplicaba esa política.
Ante ello, el señor Alvear Maldonado alegó que era socio de EY y que, por lo tanto, no le aplicaba la política de *923 arbitraje dirigida a los empleados. EY replicó que, de acuerdo con los modelos de sus contratos de sociedad, la política de arbitraje también aplicaba a sus socios.
El señor Alvear Maldonado presentó una moción, fundamentada en los Cánones 21 y 22 del Código de Ética Profesional, 4 LPRA Ap. IX, para descalificar al bufete Fiddler, González y Rodríguez (FGR), quien fungía como representante legal de EY. El señor Alvear Maldonado alegó que cuando fue socio de EY sostuvo varias reuniones con abogados de FGR en las que compartió información confidencial que en el presente pleito pretendían utilizar en su contra. Adujo, además, que se proponía citar como testigo al Ledo. Jorge M. Cañellas Fidalgo, quien fue socio de EY durante el mismo tiempo que el señor Alvear Maldonado fungió como socio de la compañía y quien, además, trabajaba como abogado en FGR.
EY alegó que no procedía la descalificación del bufete FGR. Sostuvo que no existía un conflicto de interés porque FGR nunca tuvo una relación de abogado-cliente con el señor Alvear Maldonado en su carácter personal, sino con EY.
El foro primario resolvió que no existía un conflicto de interés bajo el Canon 21, supra, y denegó la moción de descalificación bajo ese fundamento. Sin embargo, permitió cierto descubrimiento de prueba para justificar la presentación del licenciado Cañellas Fidalgo como testigo del señor Alvear Maldonado.
Posteriormente, el señor Alvear Maldonado presentó una solicitud de producción de documentos y requerimiento de admisiones que EY objetó parcialmente por en-tender que excedía lo pautado por el tribunal.
Ante la objeción de EY, el señor Alvear Maldonado alegó que, de acuerdo con los documentos que EY entregó, el señor Alvear Maldonado era socio de la compañía y no empleado. Sostuvo que el licenciado Cañellas Fidalgo, como excompañero socio de EY, podía testificar sobre este hecho y sobre *924 otros asuntos relacionados con la controversia. El señor Alvear Maldonado reiteró la solicitud de descalificación.
EY alegó que la descalificación no procedía porque no se demostró, como exige el Canon 22 del Código de Etica Profesional, supra, que el testimonio que emitiría el licenciado Cañellas Fidalgo sería perjudicial para el cliente de FGR. Por otra parte, sostuvo que la controversia sobre la cual testificaría el licenciado Cañellas Fidalgo se había tornado académica porque EY aceptó que el señor Alvear Maídonado era socio y no empleado.
El Tribunal de Primera Instancia determinó que dado que EY aceptó que el señor Alvear Maldonado era socio, la utilización del licenciado Cañellas Fidalgo para probar ese hecho se había tornado académica. El señor Alvear Maídonado solicitó una reconsideración de ese dictamen y argumentó, en lo pertinente, que el testimonio del licenciado Cañellas Fidalgo no se limitaría a la controversia sobre su clasificación como socio, sino que atendería también otros asuntos del caso. Ante ello, el foro primario permitió que el señor Alvear Maldonado sometiera al licenciado Cañellas Fidalgo a una deposición y ordenó la producción de una serie de documentos.
EY se opuso a la toma de deposición y a la producción de documentos por dos razones. Primero, entendía que la mayoría de los temas que se cubrirían en la deposición tenía el propósito de probar algo que ya no estaba en controversia, a saber, el carácter de socio del señor Alvear Maldonado. Segundo, sostuvo que el testimonio del licenciado Cañellas Fidalgo no era indispensable y que la información que se quería obtener a través de su testimonio podía obtenerse por conducto de otros testigos u otros medios menos onerosos. En esencia, EY argumentó que la norma pautada por el Tribunal Supremo en Ades para los abogados de las partes aplicaba igualmente a los socios de ese abogado.
*925 El 1 de octubre de 2012, el foro primario reiteró que el señor Alvear Maldonado podía deponer al licenciado Cañellas Fidalgo. Destacó el marco amplio y liberal del descubrimiento de prueba en nuestro ordenamiento jurídico.
Inconforme, EY acudió ante el Tribunal de Apelaciones vía una petición de certiorari. Ese foro denegó la expedición del auto. Nuevamente inconforme, EY acudió ante este Tribunal. Expedimos el auto de certiorari solicitado por EY. Con el beneficio de la comparecencia de ambas partes, resolvemos la controversia planteada.
HH hH
La Regla 27.1 de Procedimiento Civil, 32 LPRAAp. V, “no contiene limitaciones respecto a quiénes se les puede tomar deposiciones”. Ades v. Zalman, supra, pág. 518. Por el contrario, la regla establece que “cualquier parte podrá to-mar el testimonio de cualquier persona [...]”. Regla 27.1 de Procedimiento Civil, supra. Esa liberalidad tiene su base en las características del descubrimiento de prueba.
El descubrimiento de prueba se extiende a cualquier materia, no privilegiada, que sea pertinente al asunto en controversia en el pleito. Regla 23.1 de Procedimiento Civil, 32 LPRA Ap. V. Véanse: Berríos Falcón v. Torres Merced, 175 DPR 962 (2009); Rivera y otros v. Bco. Popular, 152 DPR 140, 152 (2000); Ortiz Rivera v. E.L.A., National Ins. Co., 125 DPR 65 (1989). Las reglas que lo rigen “se basan en el concepto básico de que antes del juicio, toda parte en la litigación tiene el derecho a obtener el descubrimiento de toda la información que esté en posesión de cualquier persona”. J.A. Cuevas Segarra, Tratado de derecho procesal civil, 2da ed., San Juan, Pubs. JTS, 2011, T. III, pág. 835. Véase, además, SLG Valencia v. García García, 187 DPR 283 (2012).
*926 Ahora bien, en ocasiones hemos encontrado limitaciones al descubrimiento de prueba cuando lo aconsejan razones de política pública. En Ades v. Zalman, supra, aun cuando aclaramos que la condición de ser abogado no crea una inmunidad contra la toma de deposiciones, resolvimos que cuando una parte intenta deponer al abogado de la parte contraria debe probar que existe justa causa para ello. Es decir, la parte que interesa la deposición debe pro-bar que “la información que se busca descubrir a través del abogado [no] es susceptible de ser obtenida de otras personas o medios menos onerosos y complejos”. Id., pág. 524.
En ese caso destacamos varias razones por las cuales debíamos limitar de esa forma las deposiciones al abogado de la parte contraria: (1) no hacerlo “ ‘conllevaría el agudo riesgo de añadirle un elemento más a las tensiones que se crean en un proceso adversativo entre los representantes legales’ ”, Ades v. Zalman, supra, pág. 521; (2) colocaría al abogado en la compleja situación de ser defensor y testigo a la vez; (3) “puede convertirse en un medio mortificante, abusivo y opresivo no sólo hacia ese abogado, sino hacia su representado”, id., pág. 523, y (4) la discusión de cuál pregunta soslaya el privilegio abogado-cliente dilataría innecesariamente el curso normal del pleito. íd., pág. 525.
Lo resuelto en Ades v. Zalman, supra, realmente era parte de una corriente jurisprudencial que intentaba armonizar la amplitud del descubrimiento de prueba con los conflictos que conllevaba la deposición al abogado de la parte contraria. Véanse: In re Arthur Treacher’s Franchisee Litigation, 92 FRD 429 (E.D. Pa. 1981), Draney v. Wilson, Morton, Assaf & McElligott, 30 Fed. R. Serv.2d 960 (D. Ariz. 1980), Walker v. United Parcel Services, 87 FRD 360 (E.D. Pa. 1980); In re Penn Central Commercial Paper Litigation, 61 FRD 453 (S.D. N.Y. 1973). Véase, además, T. Flynn, Jr., On “Borrowed Wits”: A proposed Rule for Attorney Depositions, 93 Colum. L. Rev. 1956, 1969-1973 (1993).
*927 El tema alcanzó su cúspide en Shelton v. American Motors Corp., 805 F.2d 1323 (8vo Cir. 1986), dos años después de que resolvimos Ades v. Zalman, supra. El Tribunal de Apelaciones Federal para el Octavo Circuito resolvió que procede la deposición del abogado de la parte contraria solamente si la parte solicitante demuestra tres requisitos: (1) que no existe otro medio para obtener la información que se busca, (2) que esa información es relevante y no privilegiada y (3) que la información es crucial para la preparación del caso. Shelton v. American Motors Corp., supra, pág. 1327. Nótese que esa regla es muy parecida a la que adoptamos en Ades v. Zalman, supra. De hecho, es un poco más estricta.(1)
Shelton no tardó en convertirse en el caso normativo en la jurisdicción federal. Véase 7 Moore’s Federal Practice Sec. 31.03 [2] (3ra ed.). Numerosos tribunales adoptaron la misma norma o una parecida. 8A Wright, Miller and Cooper, Federal Practice and Procedure 3d Sec. 2102 (2010). Véanse, por ejemplo: Nationwide Mut. Ins. Co. v. Home Ins. Co., 278 F.3d 621 (6to Cir. 2002); Thiessen v: GE Capital Corp., 255 F.3d 1221 (10mo Cir. 2001); U.S. v. All Funds on Deposit, 801 F. Supp. 984 (E.D. N.Y. 1992); Harriston v. Chicago Tribune Co., 134 FRD 232 (N.D. Ill. 1990); American Cas. Co. of Roading, Pa. v. Krieger, 160 FRD 582 (S.D. Cal. 1995). Véase, por el contrario, Qad. Inc. v. ALN Associates, Inc., 132 FRD 492, 495 (N.D. Ill. 1990), para una crítica a Shelton.(2)
El Tribunal de Apelaciones Federal para el Octavo Circuito, sin embargo, ha dado una interpretación restrictiva al caso Shelton v. American Motors Corp., supra, y se ha ne *928 gado a aplicarlo a otras situaciones de hecho. Moore's Federal Practice, supra, Sec. 31.03 [2] y Sec. 31.03. En Pamida Inc. v. E.S. Originals, Inc., 281 F.3d 726, 730 (8vo Cir. 2002), el tribunal permitió una deposición a los abogados de la parte contraria porque la información que se quería descubrir era sobre un pleito anterior ya terminado, la información era crucial para el caso pendiente y la información solo era conocida por los abogados (“Shelton was not intended to provide heightened protection to attorneys who represented a client in a completed case and then also happened to represent that same client in a pending case where the information known only by the attorneys regarding the prior concluded case was crucial”).
En Pamida, la corporación A fue demandada por violar unas patentes. Después que acabó ese pleito, la corporación A inició una acción de daños contra la compañía B por hechos relacionados. La corporación A utilizó los mismos abogados para ambos pleitos. Durante el descubrimiento de prueba, la compañía B solicitó una deposición a los abogados de la corporación A para descubrir información del pleito anterior y del pleito pendiente. El Tribunal de Primera Instancia permitió la deposición para descubrir todo lo relacionado al caso anterior y prohibió lo relacionado al pleito pendiente. El Tribunal del Circuito de Apelaciones confirmó y especificó que el propósito principal de Shelton era evitar que el abogado de una parte revelara la estrategia de litigio de un caso pendiente y no la información importante de un caso pasado. Pamida, pág. 730 (“the protection Shelton provides to opposing counsel only applies because opposing counsel is counsel in the instant case”).
Al igual que el Octavo Circuito, otros tribunales han interpretado a Shelton limitadamente y se han negado a extender esa protección. Moore’s Federal Practice, supra. Algunos tribunales, fundamentados en Pamida, Inc. v. E.S. Originals, Inc., supra, aplican la protección de Shelton *929 solamente cuando a quien se le tomará la deposición es el abogado litigante (“trial or litigation counsel”), es decir, el abogado que está directamente relacionado con la representación legal de una de las partes en el caso. Véanse: U.S. v. Phillip Morris, Inc., 209 FRD 13, 18 (D. D.C. 2002) (“[Shelton] only applies to depositions of trial counsel or counsel directly involved in representing a party in the case”); Sterne Kessler Goldstein & Fox, PLLC v. Eastman Kodak Co., 276 FRD 376 (D. D.C. 2011); Zimmerman v. State, 114 So.3d 446 (Fla. 2013). Otros tribunales también han aplicado la norma de Shelton cuando la línea de preguntas que se hará en la deposición revelará la estrategia legal del caso pendiente. Véanse: U.S. v. Phillip Morris, Inc., supra; Sterne Kessler Goldstein & Fox, PLLC v. Eastman Kodak Co., supra. Véase, además, S. Tolchinsky, Deposition of Opposing Counsel in Patent Litigation, 19 Geo. J. Legal Ethics 993, 996 (2006) (“[i]n Pamida, the court appeared to limit the use of the Shelton factors to instances in which the attorney to be deposed is either counsel in the present litigation or the subject matter of the deposition would lead to the disclosure of the attorney’s litigation strategy”).
Algunos piensan que la frase “trial or litigation counsel” incluye, no solo al abogado que es representante directo o que compareció formalmente al pleito pendiente, sino que incluye también a aquellos abogados que han asesorado en la estrategia del litigio. Véase, por ejemplo, D.R. Richmond, Depositions of Other Lawyers, 81 Tenn. L. Rev. 47, 65-66 (2013) (“the major determinant should be the lawyer deponent’s involvement in the litigation, however characterized”).
En hechos muy similares al caso bajo nuestra consideración, se ha resuelto que la norma de Shelton no aplica a un abogado que es miembro del mismo bufete que el abogado de la parte contraria que está a cargo del caso. Ellipsis, Inc. v. Color Works, Inc., 227 FRD 496 (W.D. Tenn. 2005). Véase, además, Wright, Miller & Cooper, supra, pág. 448. En Ellip *930 sis se concluyó que el miembro del bufete a quien se le tomaría la deposición no era el abogado a cargo del juicio o del litigio (“trial or litigation counsel”). íd., pág. 497.
HH HH HH
El Tribunal de Primera Instancia resolvió que procedía la deposición del licenciado Cabellas Fidalgo. EY alegó que eso es incorrecto y nos solicita, en esencia, que extendamos la norma de Ades v. Zalman, supra, a un abogado que es miembro del mismo bufete que el abogado que compareció al pleito. Por los fundamentos que elaboramos a continuación, procede extender esa norma a los hechos que nos atañen.
El problema que identificamos en Ades está presente parcialmente cuando se interesa que un miembro del bufete del abogado de récord de la otra parte deponga. Nadie puede dudar que el que se permita la deposición de un miembro del bufete del abogado de récord de la otra parte “ ‘conllevaría el agudo riesgo de añadirle un elemento más a las tensiones que se crean en un proceso adversativo entre los representantes legales”. Ades v. Zalman, supra, pág. 521. También podría convertirse en un medio mortificante, abusivo y opresivo, no solo hacia el abogado al que se pretende deponer, sino hacia el cliente o el bufete mismo. Id., pág. 523.(3) Por último, la discusión de cuál pregunta soslaya el privilegio abogado-cliente dilataría innecesariamente el curso normal del pleito. íd., pág. 524.
Es evidente que la línea jurisprudencial federal antes citada va dirigida a permitir la deposición en controversias como la de autos. Pamida, Inc. v. E.S. Originals, Inc., supra; Shelton v. American Motors Corp., supra; Moore’s Federal Practice, supra, Sec. 31.03 [2]; Wright, Miller and Cooper, supra, Sec. 2102. Sin embargo, existe una diferencia abismal entre la jurisdicción federal y la nuestra que *931 abona a nuestra conclusión de extender a este caso la norma de Ades v. Zalman, supra.
Adviértase que la línea reseñada de casos federales está enmarcada en la Regla Modelo 3.7 de conducta profesional de la American Bar Association, que indica:

Rule 3.7 Lawyer As Witness

(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
(1) the testimony relates to an uncontested issue;
(2) the testimony relates to the nature and value of legal services rendered in the case; or
(3) disqualification of the lawyer would work substantial hardship on the client.
(b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer’s firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9. Center for Professional Responsibility (American Bar Association), Model Rules of Professional Conduct, 2010, pág. 102.
Como se puede observar, el inciso (b) de esta regla no obliga a que un abogado litigante renuncie a la representación de un cliente cuando se entera de que un abogado de su firma puede ser llamado a declarar. La excepción a esa norma se configura cuando el abogado litigante incurre en un conflicto de intereses que le impida continuar con la representación legal. Model Rules of Professional Conduct, supra, pág. 104.
Distinto a la Regla Modelo 3.7, supra, nuestro Canon 22 del Código de Etica Profesional, supra, establece que “un abogado debe renunciar [a] la representación de su cliente cuando se entera de que el propio abogado, un socio suyo o un abogado de su firma puede ser llamado a declarar en contra de su cliente”. Como se aprecia, este precepto abarcador impone al abogado litigante el deber de renunciar a la representación cuando se entera que un abogado de su firma puede ser llamado a declarar. Sin duda, este canon aplica a los socios o compañeros del abogado que van a testificar en el juicio y no en una deposición. Después de *932 todo, la deposición no es un testimonio; es simplemente un mecanismo de descubrimiento de prueba. Véase R. Hernández Colón, Práctica jurídica de Puerto Rico: derecho procesal civil, 5ta ed., San Juan, Lexis Nexis, 2010, pág. 308 (“ [e] 1 hecho de que se tome una deposición no convierte al deponente en testigo de la parte que la toma, pero cuando se somete como evidencia de esa parte, sí se le constituye en testigo propio”). Véase, además, In re Alverio Sánchez, 172 DPR 181, 190-191 (2007). Ahora bien, es innegable que, a la luz de la norma ética abarcadora que contiene el Canon 22 del Código de Ética Profesional, supra, siempre existe el riesgo de que se deponga al miembro de un bufete con el propósito de hostigar y, en la eventualidad, solicitar la descalificación de ese bufete.
Así pues, como la mayoría de los problemas que reconocimos en Ades v. Zalman, supra, están presentes en este caso y existe el riesgo de que se deponga a un miembro del bufete con el propósito de solicitar su descalificación conforme al Canon 22 del Código de Ética Profesional, supra, es necesario revocar el dictamen del Tribunal de Primera Instancia. Procede extender lo resuelto en Ades a esta controversia, en que se interesa deponer a un abogado que trabaja en el mismo bufete que el abogado litigante de la parte contraria. En situaciones como esta, es necesario que la parte que solicita la deposición demuestre la existencia de justa causa, que consiste en probar que “la información que se busca descubrir a través del abogado [no] es susceptible de ser obtenida de otras personas o medios menos onerosos y complejos”. Id., pág. 524.
Aquí ya se resolvió el asunto por el cual inicialmente se iba a deponer al licenciado Cañellas Fidalgo, a saber, si el señor Alvear Maldonado era socio o empleado de EY. Sin embargo, el señor Alvear Maldonado especificó posteriormente que utilizaría la deposición para descubrir otra información relacionada con la controversia. Hay alegaciones en el expediente que apuntan a que el licenciado Cañellas *933 Fidalgo puede tener información pertinente a la controversia, pues aparentemente fue socio de EY cuando surgió la controversia del caso. Si se demuestra la justa causa, conforme con lo resuelto en Ades v. Zalman, supra, procede deponer al licenciado Cañellas Fidalgo. Después de todo, “un amplio y liberal descubrimiento de prueba es la médula del esfuerzo de destruir de una vez y para siempre la deportiva teoría de justicia’ que tanto mina la fe del pueblo en el sistema judicial”. Lluch v. España Service Sta., 117 DPR 729, 743 (1986).
Si durante la deposición surge algún conflicto relacionado con privilegios, las partes deberían actuar conforme a la Regla 27.7(b)(4) de Procedimiento Civil, 32 LPRAAp. V, que permite que un deponente se niegue, con el propósito de preservar un privilegio, a contestar una pregunta. Además, las partes siempre tendrían disponibles los remedios dispuestos en la Regla 23.2 de Procedimiento Civil, 32 LPRA Ap. V, que permite que el tribunal emita cualquier orden para proteger a una parte de hostigamiento, perturbación u opresión, así como de cualquier molestia o gasto indebido.
IV
Por otro lado, EY se embarca en su alegato en una discusión sobre por qué no procede la descalificación de FGR. En esencia, alega que tan pronto el foro primario autorizó la deposición del licenciado Cañellas Fidalgo, de acuerdo con el Canon 22 del Código de Ética Profesional, supra, FGR estaría obligado a renunciar al caso o a ser descalificado. Sin embargo, la discusión sobre este punto es prematura.
Como ya indicamos, el Canon 22 del Código de Ética Profesional, supra, aplica cuando un abogado litigante se entera de que un abogado de su firma podría ser llamado a declarar en el juicio, no en la deposición, que es un simple mecanismo de descubrimiento de prueba. In re Alverio Sán *934 chez, supra, págs. 190-191; Hernández Colón, op. cit, pág. 308.
Más importante aún, para que proceda la descalificación, lo que se va a testificar en el juicio tiene que ser en contra del cliente del socio. Canon 22 del Código de Ética Profesional, supra. Véanse: Culebras Enterprises Corp. v. Rivera-Rios, 846 F.2d 94 (1er Cir. 1988); C.W. Wolfram, Modern Legal Ethics, Minnesota, West Publishing Co., 1986, págs. 375-390; American Bar Association, Annotated Model Rules of Professional Conduct, 5ta ed., Chicago, ABA, 2003, págs. 381-391.
En esta etapa de los procedimientos el licenciado Cañellas Fidalgo estará sujeto a una deposición o si testificará en el juicio. Luego de que se despejen esas dudas, el Tribunal de Primera Instancia estará en posición de atender la controversia sobre la descalificación de FGR.
V
Por los fundamentos antes expuestos, dejamos sin efecto el dictamen del Tribunal de Primera Instancia. Procede que el Sr. Víctor Alvear Maldonado demuestre justa causa, conforme con lo resuelto en Ades v. Zalman, supra, para deponer al Ledo. Jorge M. Cañellas Fidalgo.

Se dictará Sentencia de conformidad.

La Juez Asociada Señora Rodríguez Rodríguez concurrió con el resultado sin opinión escrita. La Jueza Presidenta Señora Fiol Matta disintió por entender que el Tribunal de Primera Instancia actuó correctamente al permitir el descubrimiento de prueba solicitado por el demandante. En dos ocasiones el tribunal autorizó la toma de deposición al licenciado Cañellas con el fin único de que el demandante pudiera justificar la presentación del licenciado como testigo. De esta manera, el tribunal estaría en posición de resolver la solicitud de descalificación que quedaba pendiente de acuerdo con el Canon 22 del Código de Ética Profesional, 4 *935 LPRAAp. IX. En este caso, y ante el desarrollo particular del descubrimiento de prueba entre las partes, confirmaría la determinación de los tribunales inferiores. El Juez Asociado Señor Estrella Martínez disintió con una opinión escrita.

 Valga aclarar que no proponemos adoptar la norma de Shelton v. American Motors Corp., 805 F.2d 1323 (8vo Cir. 1986). Esa no es la controversia en este caso.

 Algunos tribunales han adoptado análisis distintos. Véase, por ejemplo, In re Subpoena Issued to Dennis Friedman, 350 F.3d 65, 72 (2do Cir. 2003) (“Rule 26 require [s] a flexible approach to lawyer depositions whereby the judicial officer supervising discovery takes into consideration all of the relevant facts and circumstances to determine whether the proposed deposition would entail an inappropriate burden or hardship”. Véase, además, Johnston Development Group, Inc. v. Carpenters Local Union No. 1578, 130 FRD 348 (D. N.J. 1990).

 Nótese que el término “bufete” incluye las grandes firmas que pueden emplear cientos de abogados y las oficinas máspequeñas que emplean pocos letrados.